# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TIMOTHY DAHL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:12-302 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Timothy Dahl ("Dahl") seeks review under 42 U.S.C. § 405(g) of an adverse decision on his application for disability insurance benefits under the Social Security Act.

Reviewing courts determine only whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). They cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

# I. Background

Dahl is a military retiree [medically discharged] with an 80% total disability rating by the Veterans Administration. (T. 56-57). He now seeks social security disability insurance benefits for disability due to back pain, knee pain, and vertigo. (T. 17, 180-196).[1] Administrative law judge, Rosanne M. Dummer ("ALJ Dummer"), issued a written decision denying Dahl's application. (T. 12-26). The Appeals Council declined review; Dahl timely instituted this proceeding. (Dkt. No. 1).

# II. Commissioner's Decision

ALJ Dummer utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).[2] She found that Dahl has ten severe impairments[3] and an equal number of non-severe impairments.[4] (T. 14). These impairments are not so severe as to be presumptively disabling, but they reduce

---

[1] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

[2] A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[3] Impairments found to be severe are: obesity, mild bilateral hearing loss with tinnitus; status post 2007 lumbar fusion with slight residual bulging; mild cervical degenerative disc disease; status post right knee surgery with bipartite patella; right shoulder possible cyst; post traumatic stress disorder and phobias; sacroilitis; facet arthropathy; and depression. (T. 14).

[4] Impairments found to be non-severe include: reflux, dyspepsia, hypertension, hernia, ethmoidal sinusitis, hyperlipidemia, asthma, refractive error OU, and sleep apnea. (T. 14). Vertigo also was considered, however, was determined not to be an acceptable diagnosis. (T. 15).

Dahl's ability to engage in work-related activities to a limited range of "light" exertion.[5] (T. 16-17).

At Step 4, ALJ Dummer found that Dahl's impairments prevent him from performing his past relevant work as a medical specialist, emergency medical technician, or Pizza Hut manager. (T. 24). To support this finding, ALJ Dummer obtained and relied up evidence from a vocational expert, Leah P. Salyers ("VE Salyers"). (T. 24-26, 69-78). ALJ Dummer further relied on VE Salyers' testimony that a person similarly situated to Dahl (*i.e.*, with residual functional capacity for a limited range of light work and specific limitations listed in note 6, *supra*) can successfully perform unskilled light work as a product packager, unskilled clerical worker, and production inspector. VE Salyers further opined that such a person can perform unskilled sedentary work as a machine monitor, production inspector, and unskilled clerical worker. (T. 25-26).

Accordingly, ALJ Dummer determined that jobs exist in significant numbers in the national economy that Dahl can perform. Then, under the framework of Medical-Vocational Rule 202.21, ALJ Dummer concluded that Dahl is "not disabled." (T. 26).

---

[5]    *See* 20 C.F.R. § 404.1567(b) for definition of "light work." Dahl's ability to perform a full range of light work is limited both exertionally and nonexertionally. (T. 16). He can lift up to 20 pounds only occasionally, but 10 pounds frequently; he can sit six of eight hours; stand/walk six of eight hours, but must have an option to alternate between sitting and standing on the hour without interrupting work. (*Id.*). He is right hand dominant, and cannot perform any over the shoulder work with the right extremity. (*Id.*). He can perform frequent but not continuous/repetitive pushing and pulling with the upper and lower extremities. (*Id.*).
      Nonexertional limitations include avoiding concentrated exposure to the hazards of work involving dangerous moving machinery and unprotected heights. (T. 16). And, due to hearing loss, he should avoid concentrated exposure to vibration; avoid work where a lack of hearing would pose a hazard to himself or others. (*Id.*). Secondary to mental limitations, he is limited to simple work involving only occasional contact with others. (*Id.*, at 16-17).

# III.  Points of Error

Dahl asserts that the Commissioner's decision should be reversed on the following grounds:

- the ALJ erred by failing to take into account the necessity of an assistive device and its impact on the claimant's residual functional capacity;

- the ALJ erred by failing to take into account the claimant's lack of balance regardless of causation, in establishing a residual functional capacity; and

- the ALJ erred by failing to properly assess the claimant's credibility under the guidelines within SSR 96-7p and 20 C.F.R. § 404.1529.

(Dkt. No. 10, pp. 3-8).  All three arguments focus on ALJ Dummer's finding regarding Dahl's residual functional capacity.  The first two directly attack the finding based on alleged errors in failing to follow procedural requirements for determining residual functional capacity as expressed in an internal policy social security ruling.  The third is an indirect attack based on failure to follow regulatory and policy requirements for assessing claimant credibility.

Under this district's practice, the parties marshal their arguments on these issues through competing briefs.[6]

# IV.  Discussion and Analysis

This section addresses only the specific points of error advanced in Dahl's brief.  Because this appeal centers around ALJ Dummer's finding regarding Dahl's residual functional capacity, a threshold description of this administrative term of art is appropriate.

---

[6]     *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders).  (Dkt. No. 3).

## A.    *Residual Functional Capacity*

Administrative law judges assess "residual functional capacity" after Step 3, but before Steps 4 and 5 of sequential evaluation.  This term refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain.  *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis.

The Commissioner provides guidance for residual functional capacity assessments in a formal regulation and an internal policy ruling. Collectively, these directives (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule; (b) require function-by-function assessments before categorizing residual functional capacity into exertional levels of work (sedentary, light, medium, heavy, and very heavy); and (c) dictate that such residual functional capacity determinations account for limitations caused by both severe and nonsevere impairments.    *See* 20 C.F.R. §§ 404.1513(c)(1), 404.1545(a)(2), 404.1545(b), 404.1569a(a); *see also* SSR 96–8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *4 (SSA July 2, 1996).

When a claimant's residual functional capacity is for less than a full range of sedentary work (the lightest exertional category), an interpretive ruling provides further guidance for administrative adjudicators.  *See* SSR 96-9p, POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK – IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS

THAN SEDENTARY WORK, 1996 WL 374185 (SSA July 2, 1996). Among other things, this Ruling gives instructions for assessing effects of medically-required hand-held assistive devices on the occupational base available to persons who use them.[7] In similar fashion, it addresses occupational base erosion for persons with limitations in equilibrium and balance.[8]

B.      *Alleged Assistive-Device Error*

Dahl testified that his knee injury causes him to fall, and, for that reason, he uses a cane[9] for support when walking a distance or walking on uneven ground. (T. 67-68). He further testified that he holds the cane in his left hand, the stronger of his two hands, thus leaving only his weaker right hand/arm to grab and/or lift. (T. 61-62, 68). Dahl claims that he is only able to lift about ten pounds with his right hand /arm and is unable to lift his right arm above his shoulder. (T. 61-62).

Dahl maintains that in her residual functional capacity determination, ALJ Dummer failed to properly consider Dahl's need to use a hand-held assistive device (*i.e.*, a cane) for ambulation. (Docket No. 10, pp. 3-4). Dahl argues without elaboration that ALJ Dummer failed to follow SSR 96-9p's requirements "by not taking into account Mr. Dahl's use of a cane when determining his RFC." (*Id.*, at p. 4).

---

[7]      *See* SSR 96-9p, 1996 WL 374185, at *7.

[8]      *See* SSR 96-9p, 1996 WL 374185, at *7.

[9]      A cane is considered a hand-held assistive device. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(J)(4).

1.    <u>Does SSR 96-9p Apply?</u>

Whether SSR 96-9p governs Dahl's case is an initial concern. SSR 96–9p explains policies regarding the impact of a residual functional capacity "for *less than a full range of sedentary work* on an individual's ability to do other work." SSR 96–9p, 1996 WL 374185, at *1 (emphasis added). Here, Dahl's residual functional capacity is for light work, which is a higher exertional level than sedentary. Hence, under a literal application, SSR 96-9p may not govern.

2.    <u>Does Evidence Establish "Medical Necessity?"</u>

Putting that technicality aside, however, Dahl is not well-positioned to profit from SSR 96-9p in any event. SSR 96–9p requires consideration of whether a claimant uses a "*medically required* hand-held assistive device." SSR 96–9p, 1996 WL 374185, at *7 (emphasis added). To qualify as "medically required," there must be "*medical documentation establishing the need for a hand-held device*" and that documentation must "*describ[e] the circumstances for which it is needed. . . .*" *Id.* (emphasis added).

The burden to establish such medical necessity rests with a claimant. *See Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002). The precise documentation that a claimant must provide is not yet well-established in case law, but jurisprudence from within and outside this circuit indicate that the bar is high; it must unambiguously match all of the SSR 96-9p's detailed criteria.[10]

---

[10]    *See Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (claimant must provide an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Spaulding v. Astrue*, 379 Fed. App'x 776, 780 (10th Cir. 2010) (cane found not medically necessary despite it having been provided to claimant by Veteran's Administration medical service at the behest of a physician because the legal issue does not turn on whether a cane was "prescribed" for plaintiff, but whether a cane was "medically required" as discussed in SSR 96-9p; plaintiff does not point to specific record evidence that would satisfy the medical necessity standard);
(continued...)

Here, Dahl relies on his own subjective testimony.  Although his brief asserts that the record contains "medical evidence of his need for a cane" it fails to cite any medical evidence of record corroborating this assertion.  (Docket No. 10, p. 4).[11]  This, alone, clearly is insufficient proof of medical necessity for a hand-held assistive device.

Remaining evidence is not helpful.  ALJ Dummer noted that Dahl did not need a cane at the hearing or during his consultative examination with Kalyani Ganesh, M.D.  (T. 22, 67, 381).  Dr. Ganesh observed that Dahl walked without assistance.  (T. 381).  Although Dahl's physical therapist provided him with a forearm clutch (T. 476, 484, 500), most observations in the record noted that Dahl did not use an assistive device when walking.  (T. 255-56, 273, 303, 305, 308, 335, 352, 381).  Additionally, numerous treatment records reflect that Dahl's gait and balance were good or normal.  (T. 303, 306, 308, 310, 535).

Under these circumstances, Dahl cannot invoke SSR 96-9p's provisions or demonstrate error thereunder.

---

[10](...continued)
*Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002) (evidence insufficient to establish medical necessity of a cane where doctor merely checked a box on a form which corresponded to a statement that the "hand-held assistive device [was] medically required for ambulation," noting that SSR 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed"); *see also Perez v. Astrue*, 907 F. Supp.2d 266, 274 (N.D.N.Y. 2012) (Court found substantial evidence supported RFC; physician noted during physical examination that plaintiff used a cane as an assistance device but that it was not medically necessary given that his gait was normal without the use of the cane); *Miller v. Astrue*, 538 F. Supp.2d 641, 651 n.4 (S.D.N.Y. 2008) (quoting SSR 96-9p) ("Even if plaintiff required a cane, there is no evidence she required it at all times, and 'if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.' ").

[11]    Dahl also asserts there is medical evidence of his need for a knee brace.  (Docket No. 10, p. 4).  Because a knee brace is not a hand-held assistive device, this point is irrelevant to Dahl's argument.

### 3. Is the Claimed Error Harmless?

Finally, the overarching purpose of SSR 96-9p as it pertains to hand-held assistive devices is to assess the effects thereof on a claimant's occupational base. ALJ Dummer did not ignore Dahl's testimony on this subject, and the vocational expert testified hypothetically as to the effect of need for a cane. (T. 76). VE Salyers testified that need to use a cane would only "eliminate all the positions at light. And the positions at sedentary would not be precluded, but I believe that . . . the positions I've listed at sedentary would be reduced by a third." (T. 76). VE Salyers further testified that sedentary jobs would be precluded if the one hand that would be accessible for carrying objects has numbness, tingling, which would have the person drop things occasionally, and that hand would be unavailable for fine manipulation. (T. 76-77). ALJ Dummer asked the VE additional follow-up questions on this subject.

This circumstance demonstrates either substantial compliance with the Ruling or, at worst, harmless error. *See Howze*, 53 Fed. App'x at 222 ("Even if the ALJ erred regarding the cane, though, any error was harmless as he asked the vocational expert to take the cane into account and there were still jobs available that appellant could perform."); *see Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (only prejudicial errors warrant reversal of administrative actions).[12]

---

[12] *Sanders* involved a Veterans Administration claim, not a Social Security disability claim. The Ninth and Tenth Circuits have applied *Sanders* to Social Security cases as well. *See Harris v. Astrue*, 496 Fed. App'x 816, 819 n.1 (10th Cir. 2012); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011).

*C.     Alleged Error Regarding Lack of Balance*

Dahl claims disability due in part to vertigo.   He testified that he experiences vertigo when he stands for more than 5 minutes, after sitting from 45 minutes to 1 hour, and as a side effect of post traumatic stress syndrome. (T. 61).  Dahl claims that ALJ Dummer again failed to follow guidelines of SSR 96-9p for assessing effects of Dahl's lack of sense of balance.  (Docket No. 10, pp. 4-5).

1.     <u>Medical Evidence</u>

ALJ Dummer declined to find vertigo as a severe impairment for lack of an acceptable diagnosis.  The evidence was, indeed, cloudy.  Dahl underwent an ear, nose, and throat ("ENT") consultation for vertigo which revealed that Dahl did not have a vertigo sensation or dizziness, but rather a sensation of "lightheadedness."  (T. 347-48).   Further testing did not indicate inner ear pathology; thus, Dahl was released from ENT care. (T. 15, 349).   Dahl was sent next for examination by the Veterans Administration neurology department.  A dark goggle examination revealed no nystagmus; thus, he was discharged from *physical therapy* due to "good balance." (T. 15, 19, 539).[13]   Dahl's psychologist, Tanya S. Bowen, Ph.D., felt that Dahl's dizziness and vertigo-like symptoms were phobic or traumatic symptoms occurring in elevated spaces; thus, she diagnosed it as a symptom of chronic post traumatic stress disorder ("PTSD"). (T. 15, 464, 476-77).

---

[13]     The record is replete with comments noting that Dahl's gait and balance were good or normal.  (T. 303, 306, 308, 310, 453, 535).

2.    Requirements of SSR 96-9p

Assuming *arguendo* and *pro hac vice* that SSR 96-9p governs cases involving residual functional capacity for more than sedentary work, it provides:

> Postural limitations or restrictions related to such activities as . . . balancing . . . would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. . . . "[B]alancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.

SSR 96-9p, 1996 WL 374185, at *7.

Dahl, argues that he identified certain triggers for his lack of balance and dizziness that go beyond occurring only at heights. Specifically, a feeling of dizziness coming on when he sits back in a chair, increasing with a stressful situation, when walking on uneven ground, and even when watching others at heights. (Docket No. 10, p. 5). Beyond that, Dahl does not elaborate on how ALJ Dummer supposedly disregarded or violated requirements of SSR 96-9p relating to balance limitations and/or how the occupational base was significantly eroded.

3.    Application

As thoroughly set forth in ALJ Dummer's decision, medical evidence does not support a diagnosis of vertigo. (T. 15). Her evaluation of Dahl's symptoms did not cease, however. She assessed Dahl's sensation of dizziness and

lightheadedness as a symptom of PTSD and phobia before concluding that Dahl can perform a limited range of light work. (T. 17-18). Medical evidence that Dahl was discharged from physical therapy with good balance, assessed with vertigo on April 29, 2010, but subsequently treated for lightheadedness on May 10, 2010, all were considered. (T. 15, 19, 539).

ALJ Dummer's ultimate residual functional capacity assessment, moreover, includes balance-related limitations. She stated that Dahl should avoid concentrated exposure to work involving dangerous machinery and unprotected heights. (T. 16, 21). She also asked VE Salyers to assume that Dahl should not climb ladders, scaffolds, or ropes. (T. 70). She could rely on SSR 96-9p itself to find that dizziness or lightheadedness when sitting does not ordinarily erode one's occupational base for sedentary work. *See* SSR 96-9p, 1996 WL 374185, at *6-7. Consequently, Dahl fails to demonstrate any specific violation of SSR 96-9p or other prejudicial error in failing to take into account Dahl's lack of balance, regardless of causation, when establishing Dahl's residual functional capacity.

D.    *Alleged Error in Assessing Credibility*

In addition to testimony regarding use of a cane and problems with balance, Dahl identified many other symptoms that he considers as preventing him from working. ALJ Dummer meticulously discussed these additional subjective complaints which, for convenience, are summarized and bullet-listed in the note below.[14]  (T. 17-18). She concluded, however, that while Dahl's

---

[14]
- inability to work due to back surgery;
- chronic back pain, right knee pain, right shoulder pain, neck pain, right hip pain, and hearing loss tinnitus;
- sit for only forty-five minutes before he gets a headache;
- anxiety from PTSD;
- pain medication (Hydrocodone) limits what he is able to do;

(continued...)

impairments could be expected to cause some of the alleged symptoms, Dahl's credibility concerning intensity, persistence, and limiting effects of these symptoms was poor. (T. 21). ALJ Dummer found the "numerous daily activities" Dahl engaged in, his extensive church involvement, and the "mostly conservative care with mostly mild objective findings" noted in the medical records to be inconsistent with Dahl's testimony. (T. 16-20, 21, 22-24). ALJ Dummer also considered Dahl's demeanor when testifying and "all of the other factors that go into assessing a witness' credibility." (T. 21).

Dahl argues that this credibility assessment was flawed because it does not comport with regulatory and internal policy requirements for evaluating a claimant's credibility. Dahl further argues that the credibility determination was erroneous because it failed to factor in Dahl's long work history into the equation.

---

[14](...continued)
- physical pain from back and right shoulder,
- walking or sitting aggravates lower back and right knee;
- nothing else can be done for back, which has a pinched nerve;
- hearing loss described as a constant ringing;
- possible shoulder injury;
- cannot lift right extremity above shoulder level or reach behind back;
- medication for anxiety;
- can walk for only a quarter of a mile;
- can stand for five minutes before his hip and back hurt and he starts shaking;
- right (dominant hand) shakes and has numbness, causing problems picking up things;
- can lift only ten pounds with his right hand but thirty-forty with his left hand;
- cannot deal with crowds of three people or more;
- breathing problems, given a CPAP machine and inhaler;
- must nap because of his medications on a typical day;
- problems bending and going up stairs; and
- falls because of his knee and uses a cane.

1.  <u>Assessing Credibility</u>

Pain is an important element in disability claims, and evidence of pain and other subjective symptoms must be thoroughly considered. *See Ber v. Celebrezze*, 332 F.2d 293, 298–99 (2d Cir. 1964). The best-informed (sometimes only ) source of information regarding intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom. Testimony from claimants, therefore, is not only relevant, but desirable.

On the other hand, such testimony is subjective and may be colored by interest in obtaining a favorable outcome. Hence, subjective symptomatology alone cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1529; SSR 96–7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996).

An administrative law judge has discretion to evaluate credibility of a claimant and to make an independent judgment regarding the true extent of the claimant's symptoms. *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *see Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995) (An administrative judge's determination with respect to the credibility of witnesses is given great deference because the administrative law judge heard the testimony and observed the demeanor of the witnesses.). Hence, an

administrative law judge's decision to discount a claimant's statements of symptoms must be accepted by a reviewing court unless it is clearly erroneous. *Centano v. Apfel*, 73 F. Supp.2d 333, 338 (S.D.N.Y. 1999).

When deciding how much weight to afford claimants' subjective self-evaluations, administrative law judges must adhere to a two-step inquiry set forth by the above Regulation and Ruling. *See Peck v. Astrue*, No. 07–CV–3762 (NGG), 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the administrative law judge must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); SSR 96–7p, 1996 WL 374186, at *2. Second, if the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the administrative law judge is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c)(1); SSR 96–7p, 1996 WL 374186, at *2.

When a claimant's testimony is not consistent with objective medical evidence, that testimony should be evaluated in light of seven specific, objective factors (listed in the note below) that naturally support or impugn subjective testimony of disabling pain and other symptoms.[15] If the administrative judge

---

[15]    An administrative law judge must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including he following factors:

  (i) claimant's daily activities;
  (ii) location, duration frequency, and intensity of claimant's pain or other symptoms;
  (iii) precipitating and aggravating factors;
  (iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
                                                    (continued...)

thereafter rejects the claimant's testimony, she must explain that decision with sufficient specificity to permit a reviewing court to decide whether the determination is supported by substantial evidence. *Correale–Englehart*, 687 F. Supp.2d 396, 435 (S.D.N.Y. 2010); *see also Miller v. Barnhart*, No. 02–CV–2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003); SSR 96–7p, 1996 WL 374186, at *4 ("[T]he adjudicator must . . . give specific reasons for the weight given to the individual's statements.").

2.   Application

Dahl contends that ALJ Dummer did not properly consider relevant factors listed in SSR 96-7 when making a determination on Dahl's credibility.[16] (Docket No. 10, pp. 5-7).  Dahl asserts that the administrative law judge's terse references to "demeanor" and "all of the other factors that go into assessing a witness's credibility" are insufficient to fulfill the duty to state with specificity reasons for discrediting his testimony.  *Id.*  Dahl also proffers a sub-argument, complaining that ALJ Dummer failed to consider Dahl's good work history.  *Id.*

ALJ Dummer did not illuminate in her decision what there was about Dahl's demeanor that impugned his credibility. Witness demeanor surely is relevant to credibility.  Personal observations of claimants and witnesses are

---

[15](...continued)
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3.

[16]     The Ruling cited by Dahl, SSR 96-7p, contains the same seven factors as the Regulation, 20 C.F.R. § 1529(c).  *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3.

sanctioned in both the Commissioner's Regulation and interpretive Ruling cited above. In this circuit, such observations "should be assigned only 'limited weight,' [but] there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in considering disability." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *see also Campagna v. Barnhart*, No. Civil No. 3:05 CV 517(DJS), 2007 WL 1020743, at *9 (D. Conn. Apr. 3, 2007) (finding that an administrative law judge "permissibly noted that plaintiff's demeanor at the hearing was not consistent with plaintiff's own description of his condition").

Even so, a bare recitation that a claimant's subjective testimony is not credible due to demeanor while testifying is at bottom an *ipse dixit* that does not provide sufficient specificity to permit a reviewing court to decide whether the credibility determination is supported by substantial evidence. Thus, were undescribed demeanor ALJ Dummer's *only* reason for discrediting Dahl's subjective complaints, the case might require remand with instructions to make a more explicit credibility determination susceptible to meaningful judicial review.

Here, however, unamplified witness demeanor is only one reason provided by ALJ Dummer. Her decision contains a lengthy and thorough explication of why she considered Dahl's credibility poor regarding intensity, persistence and limiting effects of his subjective symptoms. (T. 17-24). It compared Dahl's testimony with objective medical evidence; it further compared Dahl's testimony with other relevant factors. When viewed in its entirety, her explanations provide ample specificity to permit a reviewing court to decide whether the credibility assessment is supported by substantial evidence.

ALJ Dummer specifically cited the governing Regulation and Ruling in the Findings of Fact and Conclusions of Law section of her decision. (T. 17). Later,

in the credibility assessment itself, she specifically referenced "all the other factors that go into assessing a witness' credibility." (T. 21). This indicated her awareness of and intent to follow proper legal principles.

Further, when assessing credibility, she considered the seven specific objective factors identified in the Regulation and Ruling to the extent there was evidence thereof, engaged in the two-step process as required, and provided explicit reasons for finding Dahl's subjective complaints not fully credible, as required by circuit law. (T. 17-24). For example, with respect to the first objective factor (*i.e.,* daily activities), ALJ Dummer observed Dahl "drives, attends classes, shops, works on his home exercises, very involved in his church, and prepares lunch daily." (T. 18, 21, 22-23). With respect to the fourth and fifth objective factors (*i.e.,* type, dosage, effectiveness, and side effects of any medication and/or treatment, and treatment, other than medication, received for relief of pain or other symptoms), ALJ Dummer concluded that Dahl's medical records detail a history of "mostly conservative care with mostly mild objective findings." (T. 21).

In this respect, she elaborated that Dahl receives injections in his right hip every three months. (T. 17). He does not receive blocks or injections for his back. *Id.* He took part in a ten-week exposure program for PTSD in 2010, and sees a therapist once a month. (*Id.*). His only treatment for alleged hearing loss is to monitor to make sure it does not get worse; he can hear normal voices. (*Id.*). He was discharged from physical therapy with reduced pain and all goals met except for using proper posture and body mechanics during functional activities. (T. 22). He was issued a knee sleeve, straight cane, and elliptical machine. (T. 18). He denied side effects from Hydrocodone in a 2010 pension examination. (T. 22).

Finally, with respect to the seventh factor (*i.e.*, other factors concerning functional limitations), ALJ Dummer not only mentioned demeanor, but also gave multiple examples supporting her less-than-credible finding. (T. 21-22). Dahl has never been hospitalized for treatment of mental impairments, and no evidence of inpatient treatment was ever recommended. (T. 21). Image therapy only lasted three months, and he sees a therapist only once a month. (T. 21-22). Dahl rated a global assessment of functioning of 58-60, indicating no more that moderate difficulty in social, occupational, or school functioning. (T. 22). Moreover, he denied every single social deficit asked on his function report prepared for the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations. (*Id*.).

With respect to musculoskeletal impairments, there was no evidence of surgeries performed or recommended during the relevant time period. (T. 22). Every orthopedist of record released Dahl back to physical therapy with recommendations of continuing conservative care. (*Id*.). Imaging studies have been stable, mostly mild and non-revealing, including Dahl's right shoulder magnetic resonance imaging ("MRI"), right hip MRI, right knee MRI, cervical x-ray, and lumbar MRI. (*Id*.).

Only after this full survey did ALJ Dummer conclude that Dahl was less than fully credible. (T. 21, 24). Thus, ALJ Dummer properly considered the evaluative factors set forth in the Regulation and Ruling, and her determination that Dahl's subjective complaints should be discounted is supported by substantial evidence.

As for work history, it surely is correct to argue that " 'a good work history may be deemed probative of credibility.' " *Wavercak v. Astrue,* 420 Fed. App'x 91, 94 (2d Cir. 2011) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)).

However, it is " 'just one of many factors' appropriately considered in assessing credibility." *Id.* ALJ Dummer discussed Dahl's medical discharge from the military after 22 years of service as well as his Veteran's Administration disability rating. (T. 17-18, 23). Additionally, ALJ Dummer took note of Dahl's work history in her Step 4 determination. (T. 24).

Dahl clearly is not a malingerer, and it is evident that ALJ Dummer did not consider him as such. She mentioned Dahl's public service career and the disability rating he has from the Veterans Administration. (T. 17-18, 23). She also commented favorably more than once on Dahl's continuing daily activities, especially those that are church-related. (T. 22-23). Based in part on Dahl's subjective testimony, she assessed Dahl as having more severe impairments than were claimed in Dahl's application for disability insurance benefits.

These factors, together with a long work history, would bolster general credibility. ALJ Dummer, however, identified other factors that outweighed Dahl's credibility with respect to the narrower issue of intensity, persistence and limiting effects of subjective symptoms. To be sure, another reasonable fact-finder might have made a more favorable credibility determination, but ALJ Dummer's contrary assessment is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Hence, it was within the bounds of her considerable discretion.

When, as here, an administrative judge exercises her discretion properly, it is well settled that "[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant." *Carroll*, 705 F.2d at 642. *See also Aponte v. Secretary, Dep't of Health & Human Servs.*,

728 F.2d 588, 591 (2d Cir.1984) (If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain).

In sum, ALJ Dummer's decision reflects no structural or legal error in her credibility determination. Her decision contains specific reasons for the finding on credibility, supported by the evidence in the case record, and is sufficiently specific to make clear the weight she gave to Dahl's statements and the reasons for that weight. She faithfully applied the governing Regulation and Ruling. And, as determined above, substantial evidence supports that determination. As such, there is no basis, therefore, to reverse the Commissioner's decision for a legally-flawed credibility choice.

## V. Recommendation

The Commissioner's decision denying disability benefits should be AFFIRMED.

## VI. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___31___ day of ___July___ 2013.

_____
Earl S. Hines
United States Magistrate Judge